**FILED**

**July 13, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 12:31 PM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MURFREESBORO

| | | |
|---|---|---|
| **DAVID WILLIAMS** | ) | **Docket No.: 2015-05-0235** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 75284-2014** |
| **NISSAN NORTH AMERICA, INC.** | ) | |
| **Employer,** | ) | **Judge Dale Tipps** |
| **And** | ) | |
| **SAFETY NAT. CAS. CORP.** | ) | |
| **Insurance Carrier.** | ) | |

---

## COMPENSATION HEARING ORDER

---

This matter came before the undersigned Workers' Compensation Judge on July 6, 2016, for a Compensation Hearing pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issues are: (1) whether the conditions for which the employee, David Williams, seeks benefits arose primarily out of and in the course and scope of his employment with the employer, Nissan North America, Inc,; (2) whether Mr. Williams is entitled to temporary disability benefits, and if so, in what amount; (3) whether Mr. Williams is entitled to permanent disability benefits; (4) whether Mr. Williams is entitled to past or future medical benefits; and (5) whether Mr. Williams' left elbow injury claim is barred for failure to provide adequate statutory notice.[1] For the reasons set forth below, this Court finds that Mr. Williams established by a preponderance of the evidence that he provided adequate notice and that he sustained a left elbow injury primarily arising out of and in the course and scope of his employment with Nissan. Accordingly, the Court finds that Mr. Williams is entitled to medical benefits, temporary total disability benefits, and permanent partial disability benefits.

### History of Claim

Mr. Williams is a forty-nine-year-old resident of Rutherford County, Tennessee.

---

[1] A complete listing of the technical record and exhibits admitted at the Compensation Hearing is attached to this Order as an appendix.

1

He testified he has worked for Nissan for approximately fifteen years. For approximately eight years prior to his work injury, he worked in the paint prep booth.

Mr. Williams described his work in considerable detail. The paint prep booth had six different job stations, and each employee in the booth would perform a four-job rotation every workday. The work involved inspection and preparation of automobile bodies for painting. Although the specific duties varied with each station, Mr. Williams was required to check for defects in the metal by sight and by feel. When defects were located, Mr. Williams would rub them out manually with a sanding screen or sand them off with one of several power sanders. The line typically ran 400 to 440 vehicles per shift, so Mr. Williams performed this procedure approximately every forty to forty-five seconds.

On June 13, 2014, Mr. Williams was involved in a work accident that resulted in injuries to his shoulder. Nissan accepted the claim as compensable and provided medical treatment with Dr. Jeffrey Hazlewood, the authorized treating physician (ATP). The Bureau approved a settlement in that claim on January 13, 2016. (Ex. 10.) Following his return to work after the shoulder injury, Mr. Williams began developing tingling and numbness from his left elbow to his ring finger and small finger. He reported the problem to the nurse practitioner in the onsite medical clinic, who examined him and performed some type of motion tests. Mr. Williams contended he did not feel he had access to any further authorized treatment for his left elbow after that visit.

Mr. Williams subsequently developed similar symptoms in his right elbow, as well as locking and pain in his right shoulder. He reported these problems to his supervisor on September 18, 2014. Nissan provided a panel of physicians, from which he selected Dr. Hazlewood. (Ex. 7.)

Dr. Hazlewood, who was still treating Mr. Williams' left shoulder condition, saw him on October 1, 2014, for complaints of right elbow and shoulder pain. Mr. Williams reported a gradual onset of pain that he attributed to repetitive pushing, pulling, and lifting on the job. He denied any other events or contributing activities. Dr. Hazlewood examined Mr. Williams and performed some physical tests. He noted full rotation of the shoulder with pain, some crepitus, and a positive Neer's impingement sign. He found full range of motion in the elbow with no swelling. (Ex. 2 to Dr. Hazlewood's deposition.)

Dr. Hazlewood's impression was:

Generalized right shoulder girdle pain and right lateral elbow pain. I don't really get a lateral epicondylitis on exam, but just some tenderness around the elbow itself without swelling. I don't find any evidence of ligament or tendon rupture. The shoulder seems to be more of a generalized rotator

2

cuff tendinitis type syndrome and possibly impingement. I do not find any suggestion of rotator cuff tear.

*Id*. When asked to address causation, Dr. Hazlewood further stated:

I just don't see how this is a "true work related event," and certainly there is no structural anatomical injury from "a harmful event at work," in my opinion. . . . I can't call it a repetitive overuse type phenomenon given the fact he has been working the same job he has worked for quite awhile, and he never had any problems before. One can call this a compensation effect, but per the research literature a compensation effect does not cause a work compensable injury/structural injury. Also, I don't think there is a structural injury here as much as just either idiopathic shoulder pain and elbow pain vs. soreness in the muscles from using his arm more on the right. . . . I cannot state this is a work related injury, especially with the new laws that have come out July 1st.

*Id*.

Dr. Hazlewood reiterated his right-arm causation opinion and analysis in his deposition testimony, and confirmed he never examined, treated, or discussed Mr. Williams' left elbow with him. (Ex. 2 at 10-13.) On cross-examination he characterized Mr. Williams' condition as idiopathic because he could not identify any cause of the shoulder and elbow complaints. *Id*. at 24-29. He also confirmed he did no diagnostic studies of the elbow or shoulder, and acknowledged those could be useful in determining the presence of a structural injury. *Id.* at 31-32.

Based on Dr. Hazlewood's opinion, Nissan denied Mr. Williams' claim on October 10, 2014, on the grounds that his condition was not primarily work related. (Ex. 9.) Mr. Williams sought medical treatment on his own with Dr. Roderick Vaughan, whom he saw for the first time on October 20, 2014. Dr. Vaughan examined Mr. Williams and ordered MRIs of the right elbow and shoulder, as well as a nerve conduction study. After reviewing the films and test results, Dr. Vaughan diagnosed right rotator cuff syndrome, right lateral epicondylitis/tendinopathy, and right cubital tunnel syndrome. (Ex. 3 at 28.) He performed surgical epicondylar debridement, extensor tendon repair, and ulnar nerve decompression transposition on December 11, 2014. *Id*. at 37.

On December 29, 2014, Mr. Williams complained to Dr. Vaughan of left shoulder and elbow pain and numbness in his left ring finger and small finger. He reported these symptoms began approximately one month prior to his right arm and shoulder problem. After an EMG and MRI, Dr. Vaughan assessed left ulnar neuropathy. *Id*. at 41, 60. He performed a left ulnar decompression and transposition on March 3, 2015. *Id*. at 95.

3

In his deposition, Dr. Vaughan was asked whether Mr. Williams' right cubital tunnel injury primarily arose as a result of his repetitive work injuries. He responded:

> Mr. Williams had relayed to me that he performed repetitive gripping at work and used pneumatic tools, which could cause vibration. He also indicated that he worked in an outstretched manner and that his hands were used relatively close to the torso with the elbow in flexion. Mr. Williams had no other significant contributing factors such as a history of blunt trauma to the ulnar nerve or history of diabetes, which can contribute to neuropathy. In turn, I estimated that it was probable that his cubital tunnel syndrome on both the right and left upper extremities were related to his repetitive work activities.

(Ex. 1 at 17-18.)

When asked whether Mr. Williams' right shoulder injury arose primarily out of his work activities, Dr. Vaughan testified:

> His MRI demonstrated mild biceps tendinitis and there was a questionable tear of the superior labrum, mild tendinosis of the cuff was also noted. No cuff tear was seen. I thought that it was probable that his findings were degenerative and the repetitive work activity could exacerbate that underlying condition but was not the majority causation of it. . . . I'm of the opinion that it would be more than 50 percent probable that [the work activities] would exacerbate the underlying condition.

*Id.* at 18-19. Dr. Vaughan also opined it was more probable than not that the right cubital tunnel surgery was reasonable and medically necessary to treat Mr. William's work-related condition. *Id.*

Regarding Mr. Williams' left arm, Dr. Vaughan testified that the cubital tunnel conditions primarily arose out of his repetitive work activities. *Id.* He went on to assign whole body impairments of two percent for the left elbow and five percent for the right elbow. He assigned no impairment to the right shoulder. *Id.* at 20-21.

Following Mr. Williams' recovery from surgery, he returned to work at Nissan, where he now works in a different department.

Mr. Williams filed a Petition for Benefit Determination (PBD) on August 4, 2015, seeking temporary and permanent disability and medical benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a post-discovery Dispute Certification Notice (DCN) on June 15, 2016.

At the Compensation Hearing, Mr. Williams asserted he is entitled to medical treatment, temporary disability benefits, and permanent disability benefits for injuries to his right shoulder, right elbow, and left elbow arising primarily out of and in the course and scope of his employment. He contended he has rebutted the statutory presumption of correctness attached to the right shoulder/elbow causation opinions of Dr. Hazlewood. Specifically, he argued that Dr. Hazlewood's causation opinions in this case are inconsistent. He also asserted Dr. Hazlewood is biased in favor of workers' compensation carriers and employers. He further contended Dr. Hazlewood's opinion is unsound because he only saw Mr. Williams on one occasion and failed to order or consider any diagnostic studies in reaching his conclusions.

Mr. Williams contended Dr. Vaughan, on the other hand, is a board certified orthopedic surgeon who is better equipped to evaluate his injuries. He was the treating physician who saw Mr. Williams many times over the course of several months. Mr. Williams maintained Dr. Vaughan's causation opinion, when taken in conjunction with the lay testimony, is sufficient to overcome the presumption of correctness statutorily afforded to Dr. Hazlewood.

Nissan countered that Mr. Williams is not entitled to any additional workers' compensation benefits for his left elbow because he failed to provide the statutorily-required notice of the injury. It further argued Mr. Williams has not met his burden of proving compensability because Dr. Vaughan's opinion is insufficient to overcome the presumption that Dr. Hazlewood's opinion is correct. Nissan further asserted it has a statutory right to an offset against any medical and disability benefits.

**Findings of Fact and Conclusions of Law**

The following legal principles govern this case. Mr. Williams has the burden of proof on all essential elements of his claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff*, No. 2014-05-0005, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Tenn. Workers' Comp. App. Bd. Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2015) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence."). In analyzing whether Mr. Williams has met his burden, the Court will not construe the law remedially or liberally in his favor, but instead must construe the law fairly, impartially, and in accordance with basic principles of statutory construction favoring neither Mr. Williams nor Nissan. *See* Tenn. Code Ann. § 50-6-116 (2015).

5

*Compensability*

Mr. Williams' burden includes proving his injury arose primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(14) (2015). To do so, he must show his injury was "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2015). Further, he must show, "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015).

Applying these principles to the facts of this case, the Court finds Mr. Williams has met his burden and is entitled to the requested benefits for his left elbow injury. He testified he developed tingling and numbness from his left elbow to his ring finger and small finger, which he reported to the nurse practitioner in Nisan's onsite medical clinic. This constitutes a specific set of incidents, identifiable by time and place of occurrence. Nissan submitted no proof to the contrary.

Regarding Nissan's notice defense, Tennessee Code Annotated section 50-6-201(a)(1) (2015), provides in pertinent part that:

> Every injured employee . . . shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has no actual notice, written notice of the injury . . . *unless it can be shown that the employer had actual knowledge of the accident.* (Emphasis added.)

As noted above, Nissan failed to present any evidence rebutting Mr. Williams' testimony that he told Nissan's nurse practitioner about his left elbow problems. The Court finds he has established Nissan's actual knowledge of the injury and that this constitutes adequate legal notice.

The only medical evidence submitted regarding the cause of Mr. Williams' left elbow condition was the opinion of Dr. Vaughan, who testified the cubital tunnel condition primarily arose out of Mr. Williams' repetitive work activities. As this opinion was unrebutted by any medical proof, the Court finds Mr. Williams has met his burden of proving "to a reasonable degree of medical certainty that [his work] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment."

Nissan argued that the Court should disregard Dr. Vaughan's opinion because he failed to demonstrate an accurate understanding of Mr. William's job duties. While there are some discrepancies in Dr. Vaughan's description of how much grasping and lifting Mr. Williams had to perform, the Court finds Mr. Williams' description of his work duties is generally consistent with "repetitive work activities" in Dr. Vaughan's

6

diagnosis. Further, the Court notes that during Dr. Vaughan's deposition, he did not change his causation opinion after Nissan's attorney provided him with a moderately detailed description of Mr. Williams' job duties.

Regarding Mr. Williams' right elbow and shoulder claim, the Court finds he failed to meet his burden of establishing the necessary causal relationship between his work and his injuries. Dr. Hazlewood testified that these conditions did not primarily arise out of and in the course and scope of employment. Dr. Vaughan's testimony was insufficient to overcome the statutory presumption of Dr. Hazlewood's opinion established by Tennessee Code Annotated section 50-6-102(14)(E) (2015).

Although the parties disputed the relative weight of the medical testimony, the Court finds that, even in the absence of Dr. Hazlewood's opinion, Dr. Vaughan's opinion would fail to meet the statutory threshold necessary to establish causation. As noted above, Mr. Williams bears the burden of proving, "to a reasonable degree of medical certainty" that his injury "contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." While Dr. Vaughan was asked whether Mr. Williams' work was the primary cause of his injury, he only testified that the cubital tunnel syndrome was "related to his repetitive work activities." Similarly, he noted the right shoulder condition was degenerative, but Mr. Williams' work "exacerbate[d] the underlying condition." The essential problem with Dr. Vaughan's opinion is that it only establishes Mr. Williams' right arm and shoulder conditions are *related* to his work, not that the work *primarily caused* them. In the absence of any other medical opinion, Mr. Williams cannot meet his burden of establishing the requisite medical causation, much less rebutting Dr. Hazlewood's opinion by a preponderance of the evidence.

*Temporary Disability Benefits*

An injured worker is eligible for temporary total disability (TTD) benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015) (citing *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978)).

The parties stipulated that, in the event the Court determines the left elbow injury to be compensable, Mr. Williams is entitled to temporary total disability benefits from March 12, 2015, through June 24, 2015, a period of 105 days. At the stipulated compensation rate of $835.00, this results in temporary total disability benefits of $12,525.00.

*Permanent Disability Benefits*

For post-July 1, 2014 injuries, permanent partial disability is paid at sixty-six and two-thirds percent of the injured employee's average weekly wage for the period of compensation as determined by multiplying the employee's impairment rating by 450 weeks. Tenn. Code Ann. § 50-6-207(3)(A) (2015). The only medical impairment rating assigned in this case is the two percent impairment given by Dr. Vaughan, giving Mr. Williams a period of compensation of nine weeks. At his stipulated compensation rate, his "original award" is $7,515.00. He is not entitled to any further disability benefits because he returned to work earning the same or greater wages. *See* Tenn. Code Ann. § 50-6-207(3)(B) (2015).

*Disability Plan Setoff*

Nissan claims to be entitled to a setoff against any temporary or permanent disability benefits, pursuant to Tennessee Code Annotated section 50-6-114(b) (2015), which provides:

> Any employer may set off from temporary total, temporary partial, permanent partial and permanent total disability benefits any payment made to an employee under an employer funded disability plan for the same injury; provided, that the disability plan permits such an offset. The offset from a disability plan may not result in an employee's receiving less than the employee would otherwise receive under this chapter. In the event that a collective bargaining agreement is in effect, this subsection (b) shall be subject to the agreement of both parties.

The parties stipulated that a Nissan-funded disability plan paid Mr. Williams short-term and long-term disability benefits totaling $18,518.95 for the period of November 19, 2014, through June 24, 2015. It further appears Nissan's plans specifically allow for such a setoff. However, the parties provided no detailed record of the disability payments or any indication of the totals paid to Mr. Williams from March 12, 2015, through June 24, 2015, the period of his recovery from the left elbow surgery. As a result, the Court is left without any information showing the amount of the "payment made to [Mr. Williams] under an employer funded disability plan *for the same injury*." Without any means of calculating the disability plan benefits attributable solely to the left arm injury, the Court must deny Nissan's setoff request.

*Medical Expenses*

"[T]he employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by

8

accident[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A) (2015). Having found that Mr. Williams' left arm injury constituted a compensable work injury, the Court finds Nissan is responsible for the costs associated with treating that condition.[2] As Dr. Vaughan provided extensive treatment, including surgery, for left elbow condition, it is appropriate that he be designated the authorized treating physician for any future treatment.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Mr. Williams' left elbow injuries shall be paid by Nissan or its workers' compensation carrier, who shall continue to provide Mr. Williams with medical treatment for these injuries as required by Tennessee Code Annotated section 50-6-204 (2015). Dr. Vaughan shall be designated the authorized treating physician for any future care. Medical bills shall be furnished to Nissan or its workers' compensation carrier by Mr. Williams or the medical providers.

2. Nissan shall pay past due temporary total disability benefits of $12,525.00 for the period from March 12, 2015, through June 24, 2015.

3. Nissan shall pay $7,515.00 in permanent partial disability benefits.

4. Mr. Williams' attorney is awarded an attorney's fee of twenty percent of the total permanent and temporary disability benefits.

5. Costs of this cause of $150.00 are assessed against Nissan pursuant to Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2015), to be paid within five days of this order becoming final.

6. Nissan shall prepare and file a statistical data form within ten business days of the date of this order, pursuant to Tennessee Code Annotated section 50-6-244 (2015).

7. After a Compensation Hearing Order entered by a Workers' Compensation Judge has become final in accordance with Tennessee Code Annotated section 50-6-239(c)(7) (2015), compliance with this Order must occur in accordance with Tennessee Code Annotated section 50-6-239(c)(9) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the fifth business day after this Order becomes final or all appeals are exhausted. Failure to submit the necessary confirmation within the period of compliance may result in a

---

[2] The parties stipulated that a Nissan-funded health plan paid Mr. Williams' medical bills. Nissan contends this satisfies its statutory requirement of providing reasonable and necessary medical treatment. If Nissan choses to pay medical treatment from its health plan, that would seem to constitute compliance with the statute and this order, but the Court declines to make any apportionment between Nissan's health plan provider and its workers' compensation carrier.

9

penalty assessment for non-compliance.

**ENTERED this the 13th day of July, 2016.**

_____
**Dale Tipps**
**Workers' Compensation Judge**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Compensation Hearing Order to appeal the decision to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal your case to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within thirty calendar days* of the date the Workers' Compensation Judge entered the Compensation Hearing Order.

3. Serve a copy of the Compensation Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The party filing the notice of appeal, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within fifteen calendar days of the filing

of the Compensation Hearing Notice of Appeal. Alternatively, the party filing the appeal may file a joint statement of the evidence within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03 (2015).

6. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Workers' Compensation Appeals Board, the appeal will be docketed and assigned to an Appeals Board Judge for review. At that time, a docketing notice shall be sent to the parties. Thereafter, the parties have fifteen calendar days to submit briefs to the Appeals Board for consideration. *See* Tenn. Comp. R. & Regs. 0800-02-22-.02(3) (2015).

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, this Order will become final by operation of law thirty calendar days after entry pursuant to Tennessee Code Annotated section 50-6-239(c)(7).**

## APPENDIX

Technical record:

1. Petition for Benefit Determination
2. Post-Discovery Dispute Certification Notice
3. Joint Pre-Hearing Statement and Stipulations
4. Employee's Compensation Pre-Hearing Brief
5. Employer's Compensation Pre-Hearing Brief

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Compensation Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Exhibits:

1. Deposition transcript of Dr. Roderick Vaughan
2. Deposition transcript of Dr. Jeffrey Hazlewood
3. Employee Medical Records Index
4. First Report of Injury
5. Wage Statement
6. Employee/Manager Medical Statement
7. C-42 Physician Panel
8. Nissan Employee Benefits Manual (excerpts)
9. C-23 Notice of Denial
10. Settlement approval documents of January 13, 2016
11. July 17, 2015 email from Marshall McClarnon to Howard Keltner (identification only)
12. Affidavit of David Williams
13. David Williams' responses to Nissan's written discovery requests
14. Medical bills (identification only)

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 13th day of July, 2016.

| Name | Certified Mail | Fax Number | Via Email | Email Address |
|---|---|---|---|---|
| Marshall McClarnon, Esq. | | | X | marshall@poncelaw.com |
| Thomas Tucker, Esq. | | | X | tomtucker@bellsouth.com |

_____
**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov